BRENDA ATWOOD, A MINOR, BY HER NEXT FRIEND JAMES M. HAYES, JR., v. RONNIE SCOTT HOLLAND.

(Filed 6 July, 1966.)

**1. Automobiles § 49—**

A gratuitous passenger in an automobile is required to use that care for his own safety that a reasonably prudent person would employ under same or similar circumstances.

**2. Negligence § 26—**

A defendant has the burden of proof on the issue of contributory negligence, and therefore compulsory nonsuit upon the ground of contributory negligence should be allowed only when plaintiff's evidence, considered and taken in the light most favorable to him, together with inferences favorable to him which may be reasonably drawn therefrom, so clearly establishes this defense that no other conclusion can reasonably be drawn.

**3. Automobiles § 49— Evidence held to show contributory negligence as matter of law on part of passenger in continuing to ride with intoxicated driver in two-seated sports car with four occupants.**

Plaintiff's evidence tending to show that plaintiff, with knowledge that defendant had consumed a large quantity of beer, rode as a passenger in defendant's two-seated sports car with defendant driver and two other passengers, and continued to ride therein from 11:30 p.m. until the collision occurred at about 1:00 a.m. when defendant, traveling at an unlawful and dangerously high speed, lost control of the vehicle, and that the car was being driven in a municipality so that the car made frequent stops at which plaintiff could have alighted, etc., even though defendant drove satisfactorily until shortly before the accident when he got mad with plaintiff and pressed the accelerator to the floorboard on the way to take plaintiff home, *held* sufficient to establish plaintiff's contributory negligence as a matter of law in continuing to ride in the vehicle when she knew defendant's ability to control and operate his automobile was impaired because of the quantity of beer he had consumed and the crowded condition of the vehicle, the impairment of ability to control the vehicle being a proximate cause of the accident and the resulting injury.

MOORE, J., not sitting.

APPEAL by plaintiff from *Lupton, J.,* 11 October 1965 Civil Session of FORSYTH.

Civil action by Brenda Atwood, a minor appearing by her next friend, and a passenger in an automobile owned and driven by defendant, to recover actual damages for personal injuries and punitive damages, allegedly caused by the actionable negligence of defendant in the operation of his automobile. The complaint alleges defendant was negligent, in that he operated his automobile recklessly in violation of G.S. 20-140(a) and (b), at a speed greater than was reasonable in violation of G.S. 20-141(a), at a speed in excess of 35 miles an hour in violation of G.S. 20-141(b), in that he failed to decrease the speed of his automobile upon approaching a curve and hill crest, in violation of G.S. 20-141(c), in failing to keep his automobile under control, to maintain a proper lookout, and to drive upon the right half of the highway, in violation of G.S. 20-146.

Defendant in his answer admitted as true allegations in the amended complaint that Brenda Atwood was a female 17 years of age at the time she was injured, that North Liberty Street was a two-lane street running in a north-south direction, accommodating traffic in both directions, from curb to curb was 42 feet wide, its surface was black asphalt and dry, the weather was clear and it was dark, and denied that he was negligent in the operation of his automobile at the time Brenda Atwood was injured. Defendant in his further answer and defense pleads conditionally contributory negligence on the part of Brenda Atwood in getting into his small sports automobile which had a low roof and bucket seats and was designed to seat two people only, when two passengers and the driver were already in it, which overcrowding in defendant's automobile she knew created an inherent and dangerous condition interfering with defendant's operation of his automobile; and when she knew that defendant had been drinking intoxicating beverages to the extent that the alcoholic beverages affected his operation of his automobile; and that she continued to ride in his automobile while it traveled many miles in the city of Winston-Salem, stopping at many places, which gave her ample opportunity to leave his automobile, but she failed to do so; and these acts of negligence on her part concurred with negligence on his part in proximately causing the wrecking of his automobile and her injuries.

From a judgment of compulsory nonsuit and a dismissal of the action entered at the close of plaintiff's evidence, plaintiff appeals.

*Hatfield & Allman by Roy G. Hall, Jr., for plaintiff appellant.*
*Deal, Hutchins and Minor by John M. Minor and Richard Tyndall for defendant appellee.*

PARKER, C.J.  Plaintiff assigns as error the entry of the judgment of compulsory nonsuit and a dismissal of the action entered at the close of plaintiff's evidence.

Defendant states in his brief: "Assume sufficient evidence of negligence to go to the jury. What was the evidence as to contributory negligence?"

Brenda Atwood testified in her behalf in substance, except when quoted, as follows: On 9 February 1964 she was 17 years old. About 9 p.m. on Saturday, 9 February 1964, defendant driving his automobile with a man in it came to where she was living at 106 North Sunset Drive in the city of Winston-Salem, and she left with him in his automobile to join some friends at The Gaslight, where they sell tap beer and pizzas and have a jukebox and dance. The Gaslight is on Fourth Street in Winston-Salem right across from Sears. When they arrived at The Gaslight, she, defendant, and the man with defendant went inside where defendant had a table reserved, and the three of them took a seat at the reserved table. Mary and Nancy Hall, friends of theirs, were seated at a table next to their table. She ordered and drank a small Budweiser beer in a can, and defendant ordered and drank a yard-long beer in a big, long glass. A yard-long beer in a glass is equal to three 12-ounce cans of beer. They danced. She ordered and drank another small Budweiser beer, and did not drink any more after that. Defendant drank three or four more yard-long beers. The man who came to her house with defendant and had been at their table left. Christine Young and a man with her joined them at their table. Christine Young and the man with her were drinking whisky, and Christine Young was drunk. Between 11:00 and 11:30 p.m. she and Christine Young left The Gaslight in defendant's automobile, with defendant driving. Defendant drove his automobile to Mary Hall's place on Academy Street. Mary Hall had company, and they did not go in. Defendant's driving from The Gaslight to Mary Hall's place "was fine, his driving was all right." Bennie Benfield got in defendant's automobile with them on Academy Street, which made four people in the automobile. Defendant then drove his automobile to Fourteenth Street, where defendant and Benfield got out, went upstairs in a house, and got two pints of whisky. Defendant's driving from Academy Street to Fourteenth Street was all right. Defendant drove from Fourteenth Street to Liberty Street, and went up it towards the airport. She told defendant she wanted to go home, because they were getting ready to open the bottles of whisky. At that time they were on Liberty Street at Lowe's Hardware. Defendant stopped his automobile there to turn around. Defendant got mad, accused her of having a

late date at her home, said he would take her home, mashed his gas pedal all the way to the floor, and "took off" back up Liberty Street. She told him to slow down, but he did not until he got almost to the curve on Liberty Street. Defendant went into the curve sliding, and at that time "he was going about 75 or 80, I guess." When defendant started sliding on the right side of the street, she saw the headlights of an approaching automobile, which was right in front of The Ponderosa Pine. Then defendant cut back across the road, and his automobile hit a pole. She was knocked unconscious. Defendant's driving was at a normal rate of speed and fine before he got mad and pushed his gas pedal to the floor. During the trial it was stipulated that the speed limit at the time and place of the wreck was 35 miles an hour.

Defendant was driving his Chevrolet Corvette. Brenda Atwood testified on cross-examination: "It is a small two-seated sports car. In that car there are two bucket seats, one for the driver and one for a passenger, and in between those two seats you have a hump built up on the floor, a console. . . . During the course of that ride all over the city of Winston-Salem on that night, the four of us were in that car all the time together. Christine Young was real drunk; she wasn't flopping over on me; she was leaning against the door; she did not fall over on me. . . . After defense counsel asked me those questions on that prior examination, my attorney Mr. Hall, who is associated with Mr. Hatfield and Mr. Allman, asked me questions. Mr. Hall asked me if Ronnie Holland appeared to be intoxicated when Christine and Holland and I left The Gaslight in his Corvette, and I said yes, that when we danced he'd step on my toes and, you know, would fall against me; that he was almost too tipsy to dance. That was my answer, and that is correct. He acted that way while we were on the dance floor. It was a real small dance floor and a lots of couples. When we got outside he didn't stagger or anything. I am not saying, now, that he was drunk inside but was not drunk outside." She testified on recross-examination: "I was sitting there squeezed in between Benfield on one side, on the passenger's side, and Ronnie Holland on the other side. I had my legs over to one side; I had them on the side Christine was sitting on, on my right leg. My legs and Christine's legs and Benfield's legs were all in one compartment over there."

W. L. Brendle, a police officer in Winston-Salem, about 1:00 a.m. on Sunday, was called to the scene of an accident on Liberty Street. He testified as a witness for plaintiff in substance, except when quoted, as follows: At the scene of the accident he found a 1962 Chevrolet Corvette had skidded into a light pole. He determined

from his investigation that defendant was the owner and driver of the vehicle and that Bennie Benfield, Christine Young, and Brenda Atwood were passengers in his automobile. He testified as follows: "That Corvette is a sports car, specifically designed as a sports car; it has just two seats to it; the seats are bucket seats, each one designed for one person to sit in. The bucket seats in this Corvette are even lower than the bucket seats in the ordinary car; they are low down to the floor. When you sit in those bucket seats in the Corvette, your legs are almost sticking straight out in front of you; they sit low to the floor-board. This is a sports car, and it is designed to be right down to the ground." At the City Hospital he talked to defendant, who was bleeding pretty badly about the mouth, and his legs or ankles were messed up so he could not walk. In talking to defendant at the hospital, he could not tell what his condition was with reference to being intoxicated, though he could smell the odor of some type of alcohol on his breath.

D. T. Poplin, a policeman in the city of Winston-Salem, was working off duty at The Ponderosa Pine. This place closed about 12:15 and he and the owner were inside. The owner said he would pay him at 1:00 a.m. He was sitting on a stool inside The Ponderosa Pine facing Liberty Street, and he heard tires squeal on the street. He looked out the window and observed a car going by the big window facing Liberty Street. When it first came in view it was not completely sideways. Before it went out of his view the headlights were shining straight towards him. It was sliding sideways down the street. He heard the crash. When he heard the tires squeal, he looked and observed defendant's Corvette for a distance of at least 160 to 175 feet. In his opinion the speed of the automobile when he observed it was about 60 or 65 miles an hour. He was the first one to arrive at the scene of the accident. When he arrived Brenda Atwood and Christine Young were lying in the street. Defendant was squatting down on the street nearest the car, and Benfield was up sitting on the sidewalk.

Plaintiff has plenary evidence that defendant was guilty of negligence in the operation of his automobile proximately resulting in serious injuries to Brenda Atwood.

A gratuitous passenger in an automobile is required to use that care for his own safety that a reasonably prudent person would employ under same or similar circumstances. *Samuels v. Bowers*, 232 N.C. 149, 59 S.E. 2d 787.

This is said in 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 544:

"The failure of a guest to exercise ordinary care for his own safety may consist of his voluntarily riding in an overcrowded motor vehicle. In a few cases involving an action brought by a guest against the driver or owner of a motor vehicle for injuries sustained in an accident proximately resulting from the overcrowded condition of the vehicle, it was held under the circumstances that the guest was guilty of contributory negligence as a matter of law in riding in such vehicle. Ordinarily, however, the question of the contributory negligence of the guest in such respects has been held to be one for the jury. In some cases, it has been held that the guest was not guilty of contributory negligence in riding in a crowded motor vehicle under the circumstances present."

See also Annotations 104 A.L.R. 314, (a)1; 44 A.L.R. 2d 248, § 3.

In all actions to recover damages by reason of the negligence of the defendant, where contributory negligence is relied upon as a defense, it must be set up in the answer and defendant must assume the burden of proving his allegation of contributory negligence. G.S. 1-139 and annotations thereon. Therefore, a motion for judgment of compulsory nonsuit upon the ground of contributory negligence should be allowed only when the plaintiff's evidence, considered alone and taken in the light most favorable to him, together with inferences favorable to him which may be reasonably drawn therefrom, so clearly establishes the defense of contributory negligence that no other conclusion can reasonably be drawn. *Raper v. Byrum,* 265 N.C. 269, 144 S.E. 2d 38, and authorities cited.

Considering plaintiff's evidence alone according to the rule, it clearly establishes these facts: That Brenda Atwood knew of her own knowledge that defendant in The Gaslight drank at least four yard-long glasses of beer, which amounted to twelve 12-ounce cans of beer, and that when she and defendant danced at The Gaslight, defendant stepped on her toes and would fall against her and was almost too tipsy to dance; that she knew of her own knowledge that defendant's automobile was a Chevrolet Corvette, which is a sports car, designed for two persons to ride in, with two bucket seats, low down to the floor, each seat designed for one person to sit in, and when a person sits in a bucket seat, his legs are almost sticking straight out in front of him, and that between the two bucket seats there is a hump built up on the floor, a console; that between 11:00 and 11:30 p.m. she, Christine Young, who was drunk, and defendant left The Gaslight and got in defendant's automobile; that when defendant left The Gaslight and walked to his automobile he did not stagger; that defendant's driving from The Gaslight to Mary Hall's

place on Academy Street was all right; that Bennie Benfield got in the defendant's automobile on Academy Street, which made four persons in defendant's automobile; that she was sitting there squeezed in between Benfield on one side, on the passenger's side, and defendant on the other side; that she had her legs over to one side, she had them on the side Christine Young was sitting on, on her right leg, and that her legs and Christine Young's legs and Benfield's legs were all in one compartment; that knowing defendant's automobile was overcrowded and that a short time before defendant was almost too tipsy to dance she voluntarily continued to remain in defendant's automobile with four people in it while defendant drove his automobile many miles in the city of Winston-Salem; that when defendant was driving on Liberty Street towards the airport she told defendant she wanted to go home, because defendant and Benfield were getting ready to open the two pints of whisky they got on Fourteenth Street; that defendant got mad, accused her of having a late date, stopped his automobile near Lowe's Hardware, turned around, mashed his gas pedal all the way to the floor and "took off" back up Liberty Street; that defendant about 1:00 a.m. went into a curve on Liberty Street going about 75 or 80 miles an hour according to her testimony, and according to Poplin's testimony about 60 or 65 miles an hour, and his automobile started skidding, cut back across the street, and hit a light pole; that defendant's automobile was skidding sideways down the street; that plaintiff received serious injuries proximately resulting from the collision of defendant's automobile with the pole; and that defendant's driving was normal during that night before he got mad and pushed his gas pedal to the floor. The unescapable conclusion to be drawn therefrom is that the overcrowded condition of defendant's automobile and the condition of defendant resulting from the beer he had drunk impaired his ability to control and operate his automobile, which was a proximate cause of his losing control of it and its skidding down the street sideways and crashing into the pole, and that under all of these circumstances plaintiff's voluntarily remaining in his automobile from 11:00 or 11:30 p.m. until the collision occurred about 1:00 a.m. was a failure to use that degree of care that a reasonably prudent person would employ under the same or similar circumstances, and constituted negligence on plaintiff's part, which, concurring with defendant's negligence, contributed as a proximate cause to her injuries. Our decision here is in line with our decisions in *Bank v. Lindsey*, 264 N.C. 585, 142 S.E. 2d 357; *Davis v. Rigsby*,

261 N.C. 684, 136 S.E. 2d 33; *Rice v. Rigsby*, 261 N.C. 687, 136 S.E. 2d 35; *Tew v. Runnels*, 249 N.C. 1, 105 S.E. 2d 108.

The judgment of compulsory nonsuit is Affirmed.

MOORE, J., not sitting.